LAND, Justice.
 

 The state of Louisiana, through the Supervisor of Public Accounts, has brought the present suit to recover a tax of 4 cents per gallon, under the provisions of Act No. 6 of the Extra Session of the Legislature of 1928, as amended by Act No. 16 of 1932, on 1,188,-078 gallons of “motor fuel,” and
 
 %2
 
 of 1 cent per gallon under Act No. 14 of 1932 as an inspection fee, with a penalty of 20 per cent, for delinquency in the payment of the tax and inspection fee, and 10 per cent, additional on the amount of the tax, inspection fee and penalty, as attorney’s fees.
 

 The state alleges that defendant corporation is a “dealer” as defined by Act No..6 of the Extra Session of 192S, as amended, in “motor fuels” in the state of Louisiana, and that defendant corporation, between August 1, 1932, and February 23, 1934, did manufacture, blend or compound, and sell in the state of Louisiana 1,188,078 gallons of “motor fuel,” as defined by Act No. 6 of the Extra Session of 192S, as amended; said motor fuel being a petroleum product and being a volatile gas-generating liquid having a flash point below 110 degrees Fahrenheit.
 

 Defendant corporation filed a plea of unconstitutionality of Act No. 16 of 1932 upon the ground: “That the products upon which a tax was imposed by the provisions of Act No. 6 of 1928 [Ex. Sess.] were expressly restricted to those ‘commonly used to propel motor vehicles or motors’; that in so far as Act No. 16 of 1932 styled merely: ‘An Act to amend and re-enact Section 1 of Act No. 6 of 1928,’ purports to remove such restriction and include in the products to be taxed products other than those taxed under the original statute, contains new substantive matter for legislation and said amendatory act consequently is broader than its title, containing matters therein not expressed in such title, contrary to the provisions of section 16 of article 3 of the Constitution of 1921.”
 

 From the judgment sustaining the plea of unconstitutionality, and dismissing the suit, plaintiff has appealed.
 

 The question to be decided by the court, and the only question, is:
 

 Does Act No. 16 of the Regular Session of the Louisiana Legislature for the year 1932 comply with the requirements of section 16 of article 3 of the Constitution of 1921, which provides: “Every law enacted by the Legislature shall embrace but one object, and shall have a title
 
 indicative
 
 of such object”? (Italics ours.)
 

 Act No. 16 of 1932 is entitled: “An Act To amend and re-enact Section' 1 of Act No. 6 of 1928, approved December 18, 1928, as amended by Act No. 8 of 1930, entitled: ‘An Act to provide revenues for the public highways of the State of Louisiana
 
 by levying a tax
 
 of four cents per gallon
 
 on all
 
 gasoline or motor fuel sold, used or consumed in the State of Louisiana for domestic consumption, as authorized by paragraph A, Section 22, Article VI, of the Constitution of Louisiana, of 1921, as amended,
 
 defining motor fuel.
 
 * * *(Italics ours.)
 

 It is difficult to imagine in what way Act No. 16, of 1932 can be
 
 broader
 
 than its title, when the object of the act, as stated in its title, is to levy a tax of 4 cents per gal-
 
 *664
 
 Ion
 
 “07i all
 
 gasoline or motor fuel sold, used or consumed in the State of Louisiana for domestic consumption”;
 
 “defining Tnotor fuel,"
 
 etc. (Italics ours.)
 

 Section 1 of the act levies a tax of 4 cents per gallon
 
 “on all gasoline,
 
 or motor fuel, sold, used or consumed in the State of Louisiana for domestic consumption,” and defines “motor fuel” as meaning
 
 “all
 
 volatile gas-generating liquids having a flash point below 110 degrees F.”
 

 Act No. 16 of 1932 is “An Act To amend and re-enact Section 1 of Act No. 6 of 1928, approved December 18, 1928, as amended by Act No. 8 of 1930,” and sets forth in its title in full the title of the act to be amended and re-enacted.
 

 It is manifest therefore that, under the title of tlie original act (Act No. 6 of 1928, Ex. Sess.), the term “motor fuel” could have been defined as meaning
 
 “all
 
 volatile gas-generating liquids having a flash point below 110 degrees F.,” instead of restricting the definition, by adding “commonly used to propel motor vehicles or motors.” . '
 

 It was held in the Cedar Grove Refining Co. Case, 178 La. 810, 152 So. 531, 533, the Chief Justice being the organ of the court:
 

 “On the merits, the only question is whether the expression ‘as defined by law,’ in section 22 of article 6 of the Constitution, as amended pursuant to Act No. 219 of 1928, means ‘as already defined by law,’ or leaves the Legislature free to change the definition of ‘motor fuels.’ * * *
 

 “Manifestly, the very purpose of the expression ‘as defined by law’ was to le.ave it to the Legislature to define motor fuel,
 
 and to change the defi,niti07i as the Legislature might see fit to change it,
 
 within reasonable bounds. It is to be observed that the constitutional amendment declares also that the tax is ‘to be collected as prescribed by law.’ It is certain that the Legislature is’ thereby directed to prescribe the method of procedure, and not
 
 forbidden
 
 to depart from the method already prescribed. And so is
 
 the Legislature directed,
 
 and not forbidden, to define motor fuel.
 

 “The ai’git77ie7it that this interpretation of the act of 1932 7nalces the text b7-oader than the title
 
 is founded upon the fact that the title refers to levying the tax ‘on
 
 all
 
 gasoline or motor fuel,’ etc.
 
 It is coiitended that a volatile gas-ge7ie7-ating liquid having a flash poi7it below 110 degrees F. is not a motor fuel unless it is ‘commonly Used to propel motor vehicles'or motoi-s.’
 
 But that is a begging of the question, because the definition itself declares that- the term •
 
 ‘motor fuel’
 
 means
 
 all
 
 volatile gas-generating liquids having a flash point below 110 degrees F.
 
 That definition does not go beyond the indicatio7i, in the title of the act, that it is an act to levy a taw upon ‘motor fuel.’ ”
 
 (Italics ours.)
 

 Although the case of State v. Louisiana Coca-Cola Bottling Co., 169 La. 167, 124 So. 769, is not referred to in the opinion in the Cedar Grove Refining Co. Case, yet the fact is that that case is not only referred to in the brief of the Cedar Grove Refining Co., Inc.,
 
 on application for rehearing,
 
 on file in State of Louisiana v. Cedar Grove Refining Co., Inc., 178 La. 810, 152 So. 531; but it is said in this brief:
 

 “This brief on rehearing is directed
 
 most strenuously
 
 to the argument that Act No. 16
 
 *666
 
 of 1932
 
 is manifestly unconstitutional
 
 for the reason that
 
 the text is broader than the title of the Act.
 
 (Italics ours.)
 

 “We had placed so much confidence in the argument which we presented to the Lower Court and which was sustained by it until we laid very little stress upon this phase of the case.
 

 “However, an examination of the authorities in this State shows that it is the settled jurisprudence of this State that the Legislature cannot malee a radical change in the definition of an Article without clearly evidencing this intention in the title of the Act.
 
 (Italics in brief.)
 

 “As we said
 
 in our original brief,
 
 Act No. 16 of 1932 at no place in its title evidences any intimation that the Act
 
 intends to interpret in a different manner and in such a way as to include products which have never before beep recognized in this State as motor fuel.
 
 If the Legislature intended to make
 
 such a radical ■change
 
 in its legislative jurisprudence it was obligated
 
 to evidence this intention in the title of the Act.
 

 “Your Honors, in answering this contention stated,
 
 ‘the definition does not go beyond the indication in the title of the Act, that it is an Act to levy a tax upon “motor fuel,” ’
 
 ” quoting the language of the opinion in the Cedar Grove Refining Co. Case.
 

 “We submit that
 
 the case of the State v. Louisiana Coca-Cola Bottling Co., 169 La. 161, 124 So. 769,
 
 distinctly held that an Act amending a previous Act by incorporating in the generally accepted definition of ‘peddler,’ a new class of persons, not previously recognized as ‘peddlers’ violated article 3, § 16, of the Constitution of 1921.
 

 “The above case reviews the jurisprudence on the identical question here involved and shows it to be conclusively in our favor on the contention which we make.
 

 “We most earnestly submit the above case to the consideration of this Court
 
 as well as the other cases which we cite and which cover the exact point. In our previous brief these cases were not called to the Court’s attention and in the opinion of the Court your Honors-did not consider them.
 

 “May we quote the language which to us seems most pertinent to the issues here involved. In discussing
 
 the Coca-Cola Bottling Co. Case
 
 the Court stated, at page 174 of 169 La., 124 So. 769, 771, referring to the change in the definition of the term, ‘peddler’:
 

 “ ‘Such persons, prior to the passage of the amendatory act were not considered peddlers, and were not liable for license as such. They were liable only under section 7 of the act, relative to wholesale dealers', or under section 25, relative to those following occupations, not provided elsewhere, and likely the latter. The matter that was to be incorporated in section 18, being, as to that section, new matter, relating to a class, not included in the section, but which was beyond the scope of the section, the mere intention to amend sections 18 and 25 did not suffice.’
 

 “The Court then proceeded to hold the Act unconstitutional because it enlarged the definition of the term ‘peddler,’ without evidencing this intention in the title.” Original Brief of Defendant-Appellee on Application for Rehearing, pp. 2, 3, and 4.
 

 The decision in State v. Cedar Grove Refining Co., 178 La. 810, 152 So. 531, was rendered
 
 *668
 
 January 2, 1934, and rehearing was denied January 26, 1934.
 

 Justice Overton, the organ of the court in the Coca-Cola Bottling Co. Case, did not dissent on the ground that the Cedar Grove Refining Co. Case was contrary to the decision in the Coca-Cola Bottling Co. Case, but signed the opinion written by the Chief Justice in the Cedar Grove Refining Co. Case, as did all of the other justices of this court, thereby making the opinion in that case unanimous.
 

 The reason that there were no dissents from the decision in the Cedar Grove Refining Co. Case is that the Coca-Cola Bottling Co. Case is not in point, and can be readily differentiated from the Cedar Grove Refining Co. Case. And for the same reason, it was not considered necessary to mention the Coca-Cola Bottling Co. Case in the opinion written in the Cedar Grove Refining Co. Case.
 

 The able trial judge, who overruled the decision of this court in the Cedar Grove Refining Co. Case on the sole authority of the Coca-Cola Bottling Co. Case, was not aware, at the time, that that case had been presented to the consideration of this court on application for rehearing in the Cedar Grove Refining Co. Case, and had been found inapplicable and inappropriate.
 

 As stated by the trial judge in his written opinion: “The point made by the defense in this case is that the title to the amending Act must give notice of the change to be made when that change amounts to substantive legislation.” As shown by the brief on rehearing in the Cedar Grove Refining Co. Case, the identical point was made in that case that is now made in this case, and was decided adversely to the contention of the Cedar Grove Refining Company; the constitutionality of Act No. 16 of 1932 having been maintained.
 

 Act No. 16 of 1932 proposes to amend and re-enact
 
 section 1
 
 of Act No. 6 of 1928 (Ex. Sess.), as amended, entitled: “An Act To provide revenues for the public highways of the State of Louisiana by levying a tax of four cents per gallon
 
 on all
 
 gasoline or motor fuel sold, used or consumed in the State of Louisiana for domestic consumption, as authorized by paragraph A, Section 22, Article VI, of the Constitution of Louisiana, of 1921, as amend ed,
 
 defining motor fuel,”
 
 etc. (Italics ours.)
 

 It cannot be disputed successfully that Act No. 6 of 1928 (Ex. Sess.), the act amended and re-enacted by Act No. 16 of 1932, is an act to levy a tax on
 
 all
 
 “motor fuel.” Nor can it be denied that the title of this act contains the words “defining motor fuel,” thereby clearly indicating the object of the act in its title.
 

 Section 1 of Act No. 6 of 1928 (Ex. Sess.) reads as follows:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That there is hereby
 
 levied a taco
 
 of four cents
 
 (4‡)
 
 per gallon
 
 on all
 
 gasoline, or motor fuel, sold, used or consumed in the State of Louisiana for domestic consumption, to be collected as hereinafter set forth.
 

 “The term
 
 ‘motor fuel’
 
 is defined as meaning
 
 all
 
 volatile gas-generating liquids having a flash point below 110 degrees F.,.
 
 commonly used to propel motor vehicles or
 
 motors.” (Italics ours.)
 

 Act No. 16 of 1932, after setting forth the title of Act No. 6 of 1928 in full, is an act to amend and re-enact section 1 of Act No. 6 of 1928.
 

 
 *670
 
 Section 1 of Act No. 16 of 1932, the amending act, reads as follows:
 

 “Section 1. Be it enacted by the Legislature of Louisiana, That there is hereby
 
 levied a tarn
 
 of four cents (40) per-gallon
 
 on all
 
 gasoline, or motor fuel, sold, used or consumed in the State of Louisiana for domestic consumption, to fee collected as hereinafter set forth.
 

 “The term ‘motor fuel’
 
 is defined
 
 as meaning
 
 ail
 
 volatile gas-generating liquids having a flash point below 110 degrees F.” (Italics ours.)
 

 Act No. 16 of 1932, the amendatory act, merely eliminated the qualifying phrase, “commonly used to propel motor vehicles or motors,” contained in section 1 of Act No. 6 of 1928 (Ex. Sess.), the act amended.
 

 The Constitution of the state authorized and directed the Legislature to define “motor fuel,” as used in the act, and this court has recognized this right in the Cedar Grove Refining Co. Case, above cited.
 

 Section 1 of the original act, and section 1 of the original act, as amended,
 
 are identical,
 
 with the exception that the qualifying phrase in the definition of “motor fuel” was omitted in the amendatory act.
 

 By no stretch of the imagination can we see wherein these-two acts are not
 
 germane.
 

 Both of these acts relate to the same subject-matter and same object. Both definitions include “all volatile gas-generating liquids having a flash point below 110 degrees F.”
 

 Under the definition contained in the amendatory act, petroleum liquids that are capable of being used in a motor vehicle or motor, and not necessarily “commonly used in motors or motor vehicles,” are subject to the tax.
 

 To illustrate: In the case of Cedar Grove Refining Co., cited supra, the state was allowed to recover under Act No. 16 of 1932, amending Act No. 6 of 1928 (Ex. Sess.), a tax on “tractor distillate.” This is a motor fuel not commonly used in motors and motor vehicles, but is capable of use in tractors.
 

 Certainly, the amended definition bears ¿ close relationship to the original definition, is related thereto, and is not foreign to it; and, necessarily, the amendatory act
 
 is germane to section 1 of the original act.
 

 “While it is true that new legislation upon a
 
 distinct and different subject matter
 
 cannot be incorporated into an existing statute
 
 by way of amendment,
 
 without mention being made of its object in the title, it is equally true that
 
 any subject matter that is germane
 
 to the original text may be thus incorporated without being open to objection.” Williams v. Western Star Lodge, 38 La. Ann. 620, 626. (Italics ours.)
 
 /
 

 “It is true that it had been often held that the title of a statute amending and re-enacting a certain article of the Codes, or a certain section of the Revised Statutes,, sufficiently expresses the legislative intention. But such amendment should be limited in its scope to the subject-matter of the section proposed to be amended. ‘In such case the introduction of any new substantive matter
 
 not germane or pertinent
 
 to that contained in the original sections cannot be regarded as an amendment thereto, but must be regarded as independent legislation upon a matter not expressed in the. title of the act, and therefore void.
 
 The
 
 
 *672
 

 amendment of an act in general, or a particular section of an act, ex vi termini implies merely a change of its provisions upon the same subject to which the act or section relates.’
 
 State v. [American] Sugar Refining Co., 106 La. [553] 565, 31 So. 181.” Beary v. Narrau, 113 La. 1034, 1038, 37 So. 961, 962. (Italics ours.)
 

 The above authorities are cited in State v. Boylston, 138 La. 21, 29, 69 So. 860, 863, in which it is said by Chief Justice Monroe on rehearing: “Again, where the object of an act is to amend
 
 a statute already in existence; or to amend a particular section of a statute,
 
 the title of which declares its object, it is sufficient that the title of the amending act shall refer to the statute to be amended by its title, and declare the object to be to amend and re-enact such statute or section, but in such case, the statute or section to be revived or amended must be ‘re-enacted and published at length,’ and the matter contained
 
 in the amending act must be germane to that contained in the other."
 
 (Italics ours.)
 

 Act \No. 16 of 1932 is an act to amend a particular section (section 1) of Act No. 6 of 1928 (Ex. Sess.), and refers to Act No. 6 of 1928 (Ex. Sess.), the statute to be amended, by its title, and declares the object to be to amend and re-enact such section. There can be no question that the matter contained in Act No. 16 of 1932, the amending act,
 
 is germane
 
 to that contained in the other, Act No. 6 of 1928 (Ex. Sess.). Besides, the amendment of section 1 of Act No. 6 of 1928 (Ex. Sess.) by Act No. 16 of 1932 is the amendment of a particular section, and “ex vi termini implies merely a change of its provisions
 
 upon the same subject
 
 to which the act or section relates.”
 

 As this court, in the Cedar Grove Refining Co. Case, has held that the Constitution has left to the Legislature to define motor fuel and to change the definition as the Legislature may see fit to change it, it is manifest that the definition of “motor fuel” as
 
 “all
 
 volatile gas-generating liquids having a flash point below 110 degrees F.,” contained in section 1 of Act No. 16 of 1932, the amending act, could have been incorporated in the original Act No. 6 of 1928 (Ex. Sess.), § 1, as the title of that act is “An Act To provide revenues for the public highways of the State of Louisiana
 
 by levying a tax
 
 of four cents per gallon
 
 on all
 
 gasoline or motor fuel sold, used or consumed in the State of Louisiana for domestic consumption, as authorized by paragraph A, Section 22, Article YI, of the Constitution of Louisiana, of 1921, as amended,
 
 defining motor fuel.
 
 * * * ” (Italics ours.)
 

 In Southern Hide Co. v. Best, 176 La. 347, page 354, 145 So. 682, 684, the late Justice Overton, who also wrote the opinion in the Coca-Cola Case, said: “From this ruling it follows that, where the new matter is germane to the subject-matter of the act or section it is proposed to amend and re-enact,
 
 the title of the amendatwy act suffices, where the new matter could have been incorporated in the original act, in the first instance, under its title,
 
 when the new act is simply to amend and re-enact
 
 a given act or section thereof,
 
 and recites the title of the act to be amended.” (Italics ours.)
 

 In State v. Scallan, 160 La. 162, at page 166, 106 So. 731, 732, the Chief Justice as the organ of the court said:
 

 “It is contended also that the title of the amending act should indicate
 
 the change that
 
 
 *674
 

 is made in the provisions of the act.
 
 The title of the amending act merely declares that it is ‘An act to amend and re-enact
 
 section 8
 
 of Act No. 39 of 1921 [Ex. Sess.], entitled, “An aet to prohibit the manufacture,” ’ etc. (reproducing verbatim the title of the original act).
 

 “It is conceded that this title of the amending act would he sufficient if the title of the original act would he an appropriate title for the act as amended. The title of the original act is as appropriate for the amended act as it was for the original act."
 
 (Italics ours.)
 

 On application for rehearing, it is said:
 

 “Per Curiam. We stated in the foregoing opinion in this case that it was conceded by the learned counsel for appellant that the title of the Act 57 of 1924, amending
 
 section 8
 
 of the Act 39 of 1921,
 
 would he a sufficient title if the title of the original act of 1921 would he an appropriate title for the act as amended.
 
 We were mistaken in our belief that the point was conceded.
 
 The proposition itself, however, is correct, though not conceded.
 

 “It is said, in appellant’s petition for rehearing, that we did not decide the question
 
 whether it was necessary for the title of an amending statute to indicate just what the amendment was that was made hy the statute. Our answer is that it was not necessary that the title of the amending act should specify what the amendment was.
 
 State v. Mayfield, 147 La. 994, 86 So. 421, and State v. Boylston, 138 La. 21, 69 So. 860, are not authority to the contrary.” Page 168 of 160 La., 106 So. 731. (Italics ours.)
 

 The rehearing was denied.
 

 There can be no question in this case that the title of the original act, Act No. 6 of 1928 (Ex. Sess.), is as appropriate for the amended act, Act No. 16 of. 1932, as it was for the original act, since it is a title to levy a tax .“on
 
 all
 
 gasoline or motor fuel” and “defining motor fuel.”
 

 In Hyman v. State of Tennessee, 87 Tenn. 109, 9 S. W. 372, 1 L. R. A. 497, it is said: “The title to the amendatory act
 
 in no way indicates the character of the amendment
 
 beyond a correct recital of the title of the act' amended. It is not, however, important that the title of an amendatory act shall do more than recite the title or substance of the act amended, provided the amendment
 
 is germane
 
 to the subject of the original act, and is embraced within the title of such amended act. [Italics ours.]
 
 In other words, if the title of the original act is sufficient to embrace the matters covered hy the amendment, it is unnecessary that the title of the amendatory act should of itself he sufficient.
 
 State v. Bowers, 14 Ind. 195; Brandon v. State, 16 Ind. 197; Morford v. Unger, 8 Iowa, 82.” (Italics in brief.)
 

 In Commonwealth of Virginia v. Brown, 91 Va. 762, 21 S. E. 357, 361, 28 L. R. A. 110, a leading case on the subject, an amendatory act passed by the Legislature of the State of Virginia was attacked on the ground that the body of the amendatory act was broader than its title. The Constitution of the State of Virginia had a provision similar to section 16, article 3, of the Constitution of this state. In the Brown Case it is said: “There is another view which may be urged in support of the sufficiency of the title. It will be observed that it is an amendatory act, and not the
 
 *676
 
 original act on the subject.
 
 In such case, if the title of the original act is sufficient to embrace the matters covered by the provisions of the act amendatory thereof, it is unnecessary to inquire whether the title of the amendatory act would of itself be sufficient. If the title of the original' act is sufficient to embrace the matters contained in the amendatory act, whether that of the amendatory act is in itself sufficient is unimportant.
 
 State v. Ranson, 73 Mo. 78; City of St. Louis v. Tiefel, 42 Mo. [578] 590; Brandon v. State, 16 Ind. 197; Morford v. Unger, 8 Iowa, 82; State v. Algood, 87 Tenn. 163, 10 S. W. 310; and [Yellow River] Improvement Co. v. Arnold, 46 Wis. 214, 224, 49 N. W. 971.” (Italics in brief.)
 

 It is readily observed that this case, decided by the Supreme Court of Virginia, and supported by abundant authority, is in thorough accord with the Scallan and other Louisiana cases cited supra, and when applied to the facts at bar, upholds the constitutionality of Act No. 16 of 1932.
 

 The case of the State v. Louisiana Coca-Cola Bottling Co., 169 La. 167, 124 So. 769, upon which defendant so confidently relies, was not considered applicable or appropriate by the court, when the case of the State v. Cedar Grove Refining Co. was decided. Nor do we find any pertinency whatever, after a thorough reconsideration of the Coca-Cola Bottling Co. Case, to the Cedar Grove Refining Co. Case.
 

 In the Coca-Cola Bottling Co. Case, it was proposed to amend by section 2 of Act No. 299 of 1926, a general license law,
 
 sections 18 and %o
 
 of Act No. 205 of 1924, a general license law.
 

 It is said by the court in that case, at pages 170, 171 of 169 La., 124 So. 769, 770: “Section 18 of the Act of 1924 is the section of that act, levying licenses
 
 on peddlers.
 
 It does not undertake
 
 to define what a peddler is,
 
 but merely levies the license against ‘each and every peddler or hawker.’ In amending and re-enacting section 18 the Legislature, in section 2 of the Act of 1926, inserted a clause
 
 defining
 
 a peddler as follows: ‘Provided that any person, who goes from house to house, or place to place, or store to store, exposing and selling the merchandise which he carries with him and delivering the same at the time of or immediately after the sale or without returning to the base of business operation between the taking of the order and the delivery of the goods, otherwise than for advertising puiposes, shall be deemed a peddler. * * * ’ ” (Italics ours.)
 

 The purpose of the amendment was to define the Coca-Cola Bottling Company “as a peddler” and to compel that company to pay “a peddler’s license.”
 

 It is stated in the opinion, at pages 171, 172 of 169 La., 124 So. 769 :
 

 “It would seem clear enough that, in passing the original act, Act No. 205 of 1924,
 
 the Legislature might, under the title given to that act, and repeated in the amendatory act, have defined the word ‘peddler’ as it did in the latter act. However, that is not the question.
 
 In the original act the Legislature had levied, in section 18 thereof, the license against peddlers, without seeking
 
 to define what should constitute a peddler. The word ‘peddler,’ therefore, was to be accepted in its generally accepted sense. *
 
 * *
 

 
 *678
 
 “Under the Act of 1924, one going from store to store, selling his goods, would not have been considered
 
 a peddler,
 
 for the simple reason
 
 that he would be one selling for resale and not at retail. Such person would have been liable,
 
 if not exempted,
 
 either under section
 
 7
 
 of that act
 
 for the license prescribed
 
 for wholesale dealers,
 
 or
 
 under the omnibus clause of section 25 thereof,
 
 levying a license on all businesses, not otherwise provided for.” (Italics ours.)
 

 It is hornbook law in this state that an act to amend certain sections of a general law is limited' in its scope to the subject-matter of the sections proposed to be amended, and that the General Assembly is not authorized, under a title to a law purporting to amend a particular section of another law, to alter the subject-matter of a different section to which no reference is made in the title. State v. American Sugar Refining Co., 106 La. 553, 31 So. 181, citing numerous authorities.
 

 As stated in the Coca-Cola Bottling Co. Case, 169 La. 167, at page 175, 124 So. 769: “The matter that was to be incorporated in section 18, being, as to that section,
 
 new matter, relating to a class, not included in the section, but which was beyond the scope of the section,
 
 the mere declaration of intention to amend sections 18 and 25 did not suffice.” (Italics ours.)
 

 It is also hornbook law in this state that: “The amendment of an act
 
 in general,
 
 or of
 
 a particular section
 
 of an act,
 
 ex vi termini
 
 implies merely
 
 a change of its provisions upon the same subject
 
 to which the act or section relates.” Dolese v. Pierce, 124 Ill. 140, 16 N. E. 218, 220, cited in State v. American Sugar Refining Co., 106 La. 553, 566, 31 So. 181, and in State v. Louisiana Coca-Cola Bottling Co., 169 La. 167, 172, 124 So. 769.
 

 Such implication necessarily applies to the amendment of section 1 of Act No. 6 of 1928 (Ex. Sess.) by Act No. 16 of 1932, § 1.
 

 In the Coca-Cola Bottling Co. Case, the section to be amended
 
 did not define “peddler.”
 

 In the Cedar Grove Refining Co. Case, section 1 of Act No. 6 of 1928 (Ex. Sess.) the act amended, did define “motor fuel.” Act No. 16 of 1932, the amending act, merely changed that definition.
 

 In the Coca-Cola Bottling Co. Case, the title of the amendatory act was defective, because it failed to set forth the new matter to be incorporated in section 18, as amended.
 

 In the Cedar Grove Refining Co. Case it was held that the Act No. 16 of 1932, amending Act No. 6 of 1928 (Ex. Sess.), indicated its object in its title and that the body of the act was not broader than its title.
 

 In the Coca-Cola Bottling Co. Case it was held that, although the Legislature under the title given the original act and repeated in the amendatory act, “might, * * * have defined the word ‘peddler’ as it did in the latter act.
 
 Hoioever, that is not the question.”
 
 It follows, necessarily, that the Coca-Cola Bottling Co. Case is not an authority against the proposition, that the “title of the amending act would be sufficient if the title of the original act would be an appropriate title for the act as amended [and] that it was not necessary that the title of the amending act
 
 should specify what the amendment was.”
 
 State v. Scallan, 160 La. 162, 106 So. 731. 732.
 

 
 *680
 
 We do not find anything in the Coca-Cola Bottling- Co. Case contrary to the decision of this court in- State v. Cedar Grove Refining Co., in which the constitutionality of Act No. 16 of 1932, § 1, amending section 1 of Act No. 6 of 1928 (Ex. Sess.), was ahly and thoroughly considered and sustained.
 

 2. The contention of defendant that Act No. 16 of 1932 is ineffective and unenforceable for the reason that the definition of the products sought to be taxed thereunder is too vague and indefinite to be capable of enforcement is, in our opinion, without merit.
 

 “Motor fuel”
 
 is defined in section 1 of the act ‘as meaning a “volatile gas-generating liquid having a flash point below 110 degrees F.”
 

 It is a matter of common knowledge that the gas-generating liquid defined is a petroleum product, and, as shown in State v. Armbruster, 174 La. 914, 142 So. 125, it is a matter of proof whether such product is used or usable for motor vehicles, motors, and engines.
 

 As this ease has not yet been tried upon the merits, this court is not in a position to determine whether any of the gas-generating liquids upon which the state claims a tax has a flash point above or below 110 degrees Fahrenheit, or whether the same are used or usable for
 
 “motor
 
 fuel.”
 

 For the reasons assigned, it is ordered that the judgment appealed from be annulled and reversed.
 

 It is now ordered that this case be remanded to the court below, to be proceeded with in due course, and in accordance with the views herein expressed.
 

 It is further ordered that defendant pay the cost of this appeal and that all other costs await the final judgment in the case.
 

 O’NIELL, C. X, concurs in the decree and iands down reasons.
 

 ROGERS and ODOM, JX, dissenting.